# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **JAMES AND SONIA EZELL** | * | **CIVIL ACTION NO.  16-1166** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **ANGELA RUTH PAYNE, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court pursuant to 28 U.S.C. § 636(b)(1)(B), is a motion to dismiss for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), filed by defendants, Angela Ruth Payne, Charlotte Russ, and Todd C. Sylvester.  [doc. # 5].  For reasons assigned below, it is recommended that the motion to dismiss be GRANTED, and that the case be DISMISSED, in its entirety.

## Background

On November 18, 2003, James Ezell executed a promissory note in favor of Washington Mutual Bank, FA for the sum of $240,000.  (Pl. Opp. to Defs. Exceptions).  To secure the note, James Ezell and Sonia Ezell signed a mortgage, pledging their real property located at 1113-1115 Monroe Avenue, Asbury Park, New Jersey 077112 (the "Ezell property").  *Id.*

On September 25, 2008, the Office of Thrift Supervision seized Washington Mutual[1] and transferred ownership to the Federal Deposit Insurance Corporation ("FDIC"), which, in turn, immediately sold all of Washington Mutual's assets and substantially all of its liabilities to

---

[1]  In 2005, Washington Mutual Bank FA changed its name to Washington Mutual Bank.  (Pl. Opp. to Defs. Exceptions, Exh. 1 [doc. # 1-1, pg. 79]).

JPMorgan Chase ("JPMC").  *See Deutsche Bank National Trust Co. v. Federal Deposit Insurance Corporation*, Civ. Action No. 09-1656 (D. D.C. 6/17/2015); Pl. Opp. to Defs. Exceptions, Exh. 9.

Beginning in July 2008, the Ezells stopped making installment payments on the loan.  *See JPMorgan Chase Bank v. Ezell*, Docket No. 48546-08 (Superior Ct. N.J.) (Foreclosure Complaint); Pl. Opp. to Defs. Exceptions, Exh. 3 [doc. # 1-1, pg. 126-134].  Accordingly, on December 8, 2008, JPMC commenced foreclosure proceedings against the Ezell property in the Superior Court of New Jersey.  *Id*.[2]  On April 21, 2010, JPMC introduced into evidence in the foreclosure action an instrument asserted to be a "true copy" of the original note signed by the Ezells on November 18, 2003.  (Pl. Amend. Compl., pg. 3 [doc. # 22]).[3]  However, there were no endorsements associated with the note.  *Id*.

On August 9, 2013, the Clerk of Court for the Superior Court of New Jersey dismissed, without prejudice, the foreclosure action for failure to prosecute.  *Id*.  Upon JPMC's motion, however, the New Jersey court reinstated the foreclosure action on April 25, 2014.  *Id*.

On April 18, 2014, the Federal Deposit Insurance Corporation, as Receiver of Washington Mutual Bank, FA (FDIC-R), assigned the mortgage on the Ezell property to JPMC.[4]  Charlotte Russ executed the assignment as Vice-President for JPMC as attorney-in-fact for the

---

[2]  The law firm of Zucker, Goldberg & Ackerman, LLC filed the suit on behalf of JPMC.  *Id*.  No final judgment has been entered in the foreclosure proceeding.  (Pl. Opp. to Defs. Exceptions, pg. 29 [doc. # 1-1, pg. 75]).

[3]  *See also* Pl. Prop. 2nd Amend. Compl., ¶ 26 [doc. # 26].

[4]  James Ezell Affidavit Regarding Angela Ruth Payne & Charlotte Russ [doc. # 1-1]; M/Dismiss Exh. A.

FDIC-R.  *Id*.  Russ executed the assignment before Angela Payne, a notary public with jurisdiction in Ouachita Parish, Louisiana.  *Id*.

On October 8, 2014, JPMC assigned the mortgage on the Ezell property to PennyMac Corp.[5]  Shillen Johnson, Vice-President of JPMC, executed the assignment before Todd Sylvester, a Notary Public with jurisdiction in Ouachita Parish.  *Id*.

On November 26, 2014, PennyMac filed an amended foreclosure complaint in the New Jersey foreclosure action, asserting ownership of the Ezells' "refinance mortgage loan" by way of the alleged October 8, 2014, transfer from JPMC.  (Pl. Amend. Compl., pg. 4 [doc. # 22]; *see also* Pl. Prop. 2nd Amend. Compl., ¶¶ 31-32 [doc. # 26]).

On April 6, 2015, the Ezells filed an answer and counterclaim (apparently in the New Jersey foreclosure action), together with a third-party claim against JPMC.  (Pl. Amend. Compl., pg. 5 [doc. # 22]; *see also* Pl. Prop. 2nd Amend. Compl., ¶¶ 35 [doc. # 26]).

On May 6, 2016, James and Sonia Ezell, who, by this point, were Alabama domiciliaries, filed the instant suit against JPMC employees (and Louisiana domiciliaries), Angela Ruth Payne, Charlotte Russ, Todd C. Sylvester, and Shillen Johnson, in the Monroe City Court, Ouachita Parish, Louisiana.  Plaintiffs allege that each of the assignments purportedly confected by defendants, involving their New Jersey property, are fraudulent.

Specifically, as to Russ and Payne, plaintiffs contend that

1.      Ms. Russ did not appear before Ms. Payne as Vice-President of JPMC and attorney in fact for the FDIC-R because none of Washington Mutual's mortgage loans were received by the FDIC as of September 25, 2008.

---

[5]   James Ezell Affidavit Regarding Todd C. Sylvester and Shillem Johnson a/k/a Shillen Johnson [doc. # 1-1]; M/Dismiss Exh. B.

2.      JPMC was not the attorney in fact for the FDIC-R on April 18, 2014.

3.      Ms. Russ had no knowledge as to the whereabouts, possession or ownership of Plaintiffs' November 18, 2003 mortgage loan with Washington Mutual.

4.      Ms. Payne, as a notary public and JPMC employee, knew or should have known that Ms. Russ has never been a Vice-President of JPMC.

5.      Ms. Russ and Ms. Payne conspired with Nationwide Title Clearing, Inc. and JPMC to assist JPMC's attempt to steal money or real property from Mr. Ezell.

6.      Ms. Russ' actions violated Louisiana Revised Statutes §§ 14:12, 14:26 and 14:72.2.

7.      Ms. Payne's actions violated Louisiana Revised Statutes §§ 35:601, 14:12, 14:26, and 14:72.2.

As to Johnson and Sylvester, plaintiffs assert that,

1.      Ms. Johnson did not appear before Mr. Sylvester as Vice-President of JPMC because none of Washington Mutual's mortgage loans were received by the FDIC as of September 25, 2008 and, therefore, the FDIC-R could not have assigned the mortgage to JPMC on April 18, 2014.

2.      JPMC was not the attorney in fact for the FDIC-R on April 18, 2014.

3.      Ms. Johnson had no knowledge as to the whereabouts, possession or ownership of plaintiffs' November 18, 2003, mortgage loan with Washington Mutual.

4.      Mr. Sylvester, as a notary public and JPMC employee, knew or should have known that Ms. Johnson has never been a Vice-President of JPMC.

5.      Ms. Johnson and Mr. Sylvester conspired with the Law Office of Adam W. Scheinbach, Zuker Goldberg & Ackerman, LLC, JPMC and Penny Mac to assist JPMC and PennyMac's attempt to steal money or real property from Mr. Ezell.

6.      Ms. Johnson's actions violated Louisiana Revised Statutes §§ 14:12, 14:26 and 14:72.2.

7.      Mr. Sylvester's actions violated Louisiana Revised Statutes §§ 35:601, 14:12, 14:26, and 14:72.2.

On June 17, 2016, while the case was still pending in Monroe City Court, defendants,

Payne, Russ, and Sylvester, filed Exceptions of Lack of Subject Matter Jurisdiction, No Right of Action, No Cause of Action, Prescription and Alternative Motion to Dismiss for Nonconformity with Article 891 and Exception of Vagueness.

On, or about July 15, 2016, plaintiffs filed their opposition to defendants' motion to dismiss wherein they asserted that defendants' actions transgressed federal law.  They argued that the actions of the two notaries, Angela Payne and Todd Sylvester, violated plaintiffs' civil rights under the equal protection and due process clauses of the U.S. Constitution.  In addition, the purported assignments violated the National Stolen Property Act, 18 U.S.C. §§ 2314 and 1342. Plaintiffs also vaguely referenced 42 U.S.C. § 1981 and the First, Fourth, Thirteenth and Fourteenth Amendments of the U.S. Constitution.

Pursuant to plaintiffs' federal law allegations, first asserted in their opposition brief, defendants, Payne, Russ, and Sylvester, removed the case to federal court on August 10, 2016, on the basis of federal question jurisdiction, 28 U.S.C. § 1331.[6]  The instant motion to dismiss for failure to state a claim upon which relief can be granted promptly followed on August 22, 2016.

On November 4, 2016, plaintiffs filed a motion for leave of court to file an amended complaint and an out-of-time opposition to defendants' motion to dismiss.  [doc. # 13].[7]  On December 8, 2016, the court granted plaintiffs' motion, but explained that it would extend

_____

[6]  The Fifth Circuit has instructed the lower courts to construe new claims asserted in response to  dispositive motions as proposed amendments to the complaint.  *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n.2 (5th Cir.2008).  In any event, according to plaintiffs' petition, the parties are completely diverse.  Further, in their amended complaint [doc. # 22] and proposed second amended complaint [doc. # 26], plaintiffs confirm that the amount in controversy exceeds $75,000.  Therefore, the court also enjoys diversity jurisdiction, 28 U.S.C. § 1332.

[7]  In accordance with Local Rule 7.6, plaintiffs attached their proposed amended complaint and opposition brief to their motion.  *See* doc. # 13.

consideration of  defendants' motion to dismiss to encompass plaintiffs' amended complaint. (Dec. 8, 2016, Order [doc. # 20]).[8]  On December 16, 2016, defendants filed a reply memorandum in support of their motion to dismiss.  [doc. # 25].  Thus, the matter is ripe.[9]

## 12(b)(6) Standard

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ."  Fed.R.Civ.P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct

---

[8]  When, as here, plaintiffs amend their complaint while a motion to dismiss is pending, and defendants maintain that the defects raised in the original motion are not cured by the new pleading, then the court may consider the motion to dismiss as being addressed to the amended pleading. *Patton Elec. Co., Inc. v. Rampart Air, Inc.*, 777 F. Supp. 704, 713 (N.D. Ind. 1991) (citing 6 Wright, Miller & Kane, *Federal Practice and Procedure,* § 1476 at 556–58 (2d ed. 1990)).

[9]  On December 29, 2016, plaintiffs filed another amended complaint.  [doc. # 26].  However, by failing to seek (or obtain) consent of opposing counsel or leave of court to file another amended pleading, plaintiffs transgressed Rule 15(a)(2) of the Federal Rules of Civil Procedure.  Further, in contravention of Rule 11, the pleading was signed by only one of the two plaintiffs.  Accordingly, the Clerk of Court notified plaintiffs of these deficiencies and afforded them ten days to redress same.  *See* Notice of Deficient Document [doc. # 27].  Plaintiffs failed to do so, and, thus, the proposed pleading has been stricken
In any event, the court has reviewed the proposed amended complaint, and it would not change the outcome of the motion to dismiss.  The pleading rehashes plaintiffs' prior allegations, and even deletes some of their claims.

alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of  "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. Moreover, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5ᵗʰ Cir. Oct. 10, 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011).[10]

Rule 9(b) requires that circumstances constituting fraud or mistake be alleged with particularity. Fed.R.Civ.P. 9(b). The particularity demanded by Rule 9(b) supplements Rule 8(a)'s pleading requirement. *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5ᵗʰ Cir. 2009). Allegations of fraud under Louisiana law asserted in federal court implicate the

---

[10] "Courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5ᵗʰ Cir. 2013) (citations omitted).

7

heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986); *Conerly Corp. v. Regions Bank*, 2008 WL 4975080 (E.D. La. Nov. 20, 2008). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). What constitutes sufficient particularity for Rule 9(b) varies with the facts of each case. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992). At minimum, however, Rule 9(b) requires a plaintiff pleading fraud to "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 564-565 (5th Cir. 2002) (quoted sources and internal quotation marks omitted). Nonetheless, the "'time, place, contents, and identity' standard is not a straitjacket for Rule 9(b)." *Grubbs*, 565 F.3d at 190.

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

### Analysis

Upon review of the record it appears that, at various times, plaintiffs asserted claims for

relief under the following theories and/or statutes:  Louisiana Revised Statutes §§ 14:12, 14:26, 14:72.2, and 35:601; 18 U.S.C. §§ 2314 and 1342; 42 U.S.C. § 1981; violations of the First, Fourth, Thirteenth, and Fourteenth Amendments to the U.S. Constitution; conspiracy to commit conversion; fraud; negligent misrepresentation; fraudulent concealment; civil aiding and abetting fraud; gross negligence; civil conspiracy to defraud; notary fraud; slander of title; and violation of the New Jersey civil RICO statute.

Defendants contend that plaintiffs' claims are subject to dismissal on several grounds, including:  lack of standing, no private cause of action to enforce criminal statutes, all of the claims are time-barred, and/or plaintiffs failed to allege all the requisite elements for each of the claims.  The court will address the standing argument first, and then discuss each of the claims, divided along sovereignty lines (i.e., federal vs. state).

## I.     Standing

Defendants contend that plaintiffs do not have standing to contest the validity of the assignments at issue because plaintiffs are neither parties, nor third-party beneficiaries to the assignments.[11]  In contrast, plaintiffs maintain that the assignments are completely void (rather than merely voidable), thus, they enjoy the right to challenge their validity.  Amongst other reasons, plaintiffs contend that the assignments are void because, according to a Purchase and

---

[11] The federal courts apply two strands of standing:  "Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11–12, 124 S.Ct. 2301, 2308 (2004), abrogated in part by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, ____ U.S. ___, 134 S.Ct. 1377 (2014) (internal quotation marks and citations omitted).  Prudential standing contemplates, *inter alia*, "the general prohibition on a litigant's raising another person's legal rights . . ." *Id.*  A motion to dismiss for lack of prudential or statutory standing is properly analyzed under Rule 12(b)(6).  *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir.2011) (citations omitted).

Assumption Agreement ("P & A Agreement") between the FDIC and JPMC, the loans never

transferred to the FDIC and/or JPMC, in the first instance.  *See* P & A Agreement; Compl., Exh.

2 [doc. # 1-1, pg 81].  Plaintiffs further assert that Russ and Johnson were not vice-presidents at

JPMC, and therefore, lacked authority to enter into the assignments.

Other courts, however, have considered and rejected similar arguments brought by

mortgagors in the wake of Washington Mutual ("WaMu")'s collapse.  In so doing, they

recognized that,

> [f]ederal law specifically authorizes the FDIC, when acting as receiver of a failed
> bank, to "transfer any asset or liability" of the failed bank "without any approval,
> assignment, or consent with respect to such transfer."  12 U.S.C. §
> 1821(d)(2)(G)(i)(II).  Therefore, the assignment of Plaintiff's Mortgage from
> WaMu to Chase, with the FDIC acting as intermediary, was properly
> consummated without a written assignment.

*Howes v. Wells Fargo Bank, N.A.*, 2015 WL 5836924, at *32–33 (D. Md. Sept. 30, 2015).

Stated differently, "transfer of a mortgage, authorized by federal law, obviates the need for the

specific written assignment that state law would otherwise require." *Lackie v. Deutsche Bank*

*Nat'l Trust Co.*, 2016 WL 4076830, at *4 (D. Mass. July 29, 2016) (citations omitted); *see also*

*Andersen v. Lasalle Bank Nat'l Ass'n*, 15-30107, 2016 WL 3093375, at *3 (D. Mass. June 1,

2016) (assignment of plaintiff's mortgage from WaMu to Chase, with the FDIC acting as

intermediary, was properly consummated without a written assignment).  Thus, plaintiffs' claims

premised on an invalid assignment fail.  *Id.*

Similarly, the Fifth Circuit has recognized that a mortgagor who is not a party to, or an

intended third-party beneficiary of, an agreement that purports to transfer the mortgagor's note

and/or mortgage to another party, does not have standing to bring suit to enforce the terms of the

agreement that governs the assignment of the mortgagor's note.  *Farkas v. GMAC Mortgage,*

*L.L.C.*, 737 F.3d 338, 342 (5th Cir.2013).  Also, a contract executed on behalf of a corporation by a person fraudulently purporting to be a corporate officer is, like any other unauthorized contract, not void, but merely voidable at the election of the defrauded party.  *Reinagel v. Deutsche Bank Nat. Trust Co.*, 735 F.3d 220, 226 (5th Cir.2013) (applying Texas law).  Thus, once again, a non-party obligor lacks standing to challenge the assignment.  *Id.*

The same result obtains under New Jersey and Louisiana law.  In the context of a mortgage assignment, a mortgagor, or borrower, does not have standing to allege that an assignment between two third parties is invalid.  *English v. Fed. Nat. Mortgage Ass'n*, Civ. Action No. 13-2028, 2013 WL 6188572, at *4 (D. N.J. Nov. 26, 2013) (citations omitted) (foreclosure in New Jersey).

The Louisiana Civil Code provides that,

[a] contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral.  A contract that is absolutely null may not be confirmed.

Absolute nullity may be invoked by any person or may be declared by the court on its own initiative."

La. Civ. Code Art. 2030.

In addition,

[a] contract is relatively null when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made. A contract that is only relatively null may be confirmed.

Relative nullity may be invoked only by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own initiative.

La. Civ. Code Art. 2031.

11

Here, of course, plaintiffs contend that the assignments were fraudulent, i.e., a vice of consent,[12] which would render the assignments relatively null.  Plaintiffs have not demonstrated that they are in the category of persons whose interest the relative nullity was established.  Thus, they cannot challenge the validity of the assignments.

The foregoing notwithstanding, the instant suit differs somewhat from the typical internet step-by-step approach on D-I-Y foreclosure avoidance in that plaintiffs have initiated tort claims against the individuals who executed the assignments.  Fraud, of course, comes in two varieties, *ex-contractu* and *ex-delictu*.  Under the Civil Code, the primary remedy for a fraudulently induced contract is rescission.  *See* Civ. Code Art. 1958.  In this case, plaintiffs do not seek rescission of the assignments; rather, they, as non-parties, assert tort claims and seek tort-like damages against the signatories and notaries public involved in the execution of the assignments.  By characterizing their claims as sounding in tort, rather than contract, plaintiffs have sidestepped the standing argument that would have doomed their claims from the outset.  Nonetheless, as discussed in further detail below, plaintiffs' lack of privity also has ramifications for their tort claims, such as whether defendants owe them a duty or whether they suffered any cognizable damages.  In addition, it subjects their claims to a one year prescriptive (statute of limitations) period.  In short, the court declines to dismiss plaintiffs' claims for lack of standing.

## II.    Federal Law Claims

a)      18 U.S.C. §§ 2314 & 1342

Plaintiffs seek to assert claims under 18 U.S.C. §§ 2314 and 1342.  These provisions, however, are federal criminal statutes that do not confer a private cause of action.  *Lewis v.*

---

[12]  La. Civ. Code Art. 1948.

12

*Harrison*, Civ. Action No. 16-0055, 2017 WL 111332, at *2 (N.D. Miss. Jan. 10, 2017) (and

cases cited therein); *Graham v. Distasio*, Civ. Action No. 14-6677, 2015 WL 336473, at *1 n.1

(E.D. N.Y. Jan. 23, 2015) (and cases cited therein).  Private citizens do not have a right to

compel criminal prosecution; rather, the decision whether to file criminal charges lies within the

*discretion* of the prosecutor.  *Lewis v. Jindal*, 368 F. App'x 613, 614 (5th Cir. 2010) (citations

omitted).

>    b)    42 U.S.C. § 1981

Section 1981 provides that "[a]ll persons ... shall have the same right ... to make and

enforce contracts ... as is enjoyed by white citizens."  42 U.S.C. § 1981.  To state a § 1981 claim,

plaintiffs must show:  "(1) that [they are] a member of a racial minority; (2) that [the defendant]

had intent to discriminate on the basis of race; and (3) that the discrimination concerned one or

more of the activities enumerated in the statute . . ."  *Singleton v. St. Charles Par. Sheriff's Dep't*,

306 Fed. Appx. 195, 197–98 (5th Cir.2009) (citation omitted).

Plaintiffs have not alleged that they are a member of a racial minority, that any of the

defendants had the intent to discriminate against them because of race, or that discrimination

concerned one or more of the activities enumerated in § 1981.  Thus, plaintiffs fail to state a

claim under 42 U.S.C. § 1981.

>    c)    First, Fourth, and Fourteenth Amendment

"The First Amendment, applicable to the States via the Fourteenth Amendment, protects

freedom of speech and freedom of the press."  *Rain CII Carbon, LLC v. Kurczy*, Civ. Action No.

12-2014, 2012 WL 3577534, at *3 (E.D. La. Aug. 20, 2012) (citations omitted).  The Fourth

Amendment protects the "right of the people to be secure in their persons, houses, papers, and

13

effects, against unreasonable searches and seizures." U.S. CONST., AMEND. IV.  The protections of the Fourth Amendment extend to the states pursuant to the Fourteenth Amendment. *Dunaway v. New York*,  442 U.S. 200, 207, 99 S.Ct. 2248, 2253-2254 (1979) (citation omitted).  Finally, the Due Process Clause of the Fourteenth Amendment declares that no State shall "deprive any person of life, liberty, or property, without due process of law."  U. S. CONST., AMEND. XIV.

Violations of constitutional rights are not redressable directly, however.   Rather, plaintiffs must pursue Fourteenth Amendment claims through 42 U.S.C. § 1983. *Coleman v. Mississippi Dep't of Marine Res.*, 16-0289, 2016 WL 5794772, at *2 (S.D. Miss. Oct. 4, 2016) (citations omitted).  Here, plaintiffs did not invoke § 1983; thus, her constitutional claims are subject to dismissal. *Burns-Toole v. Byrne*, 11 F.3d 1270, 1273 n.3 (5th Cir.1994); *Mitchell v. City of Houston, Tex.*, 57 Fed. Appx. 211 (5th Cir.2003).

Even if plaintiffs *had* invoked § 1983, however, their complaint(s) remains deficient.  "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

To constitute state action, "the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 n. 18 (1982).  In general, the state does not have a constitutional duty to protect individuals from private harm. *Priester v. Lowndes County*, 354 F.3d 414, 421 (5th Cir. 2004).  Moreover, private entities are not generally considered state

14

actors.  *Meade v. Dillard Dept. Stores*, 275 F.3d 43, 43 (5th Cir. 2001).  Traditionally, "acting

under color of state law requires that the defendant in a § 1983 action have exercised power

'possessed by virtue of state law and made possible only because the wrongdoer is clothed with

the authority of state law.'"  *West v. Atkins*, 487 U.S. 42, 49 (1988) (citing *United States v.

Classic*, 313 U.S. 299, 326 (1941)).

However, for purposes of § 1983, there are several instances where seemingly private

conduct may be charged to the state.  First, "[p]rivate action may be deemed state action when

the defendant's conduct is 'fairly attributable to the State.'"  *Id.* at 423 (citing *Bass v. Parkwood

Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999)).  Under the "fair attribution" test, "the plaintiff must

show:  (1) that the deprivation was caused by the exercise of some right or privilege created by

the state or by a rule of conduct imposed by the state, or by a person for whom the state is

responsible, and (2) that the party charged with the deprivation may fairly be said to be a state

actor."  *Id.*  "State action will not accrue merely because of government acquiescence or approval

of the private entity's actions."  *Id.*  Second, under the "public function" test, a private entity may

be deemed a state actor when that entity performs a function which is traditionally the exclusive

province of the state. *Bass*, 180 F.3d at 241-42 (citing *Wong v. Stripling*, 881 F.2d 200, 202 (5th

Cir. 1989).  Third, under the state compulsion test, a state will be held responsible for a private

decision "when it has exercised coercive power or has provided such significant encouragement,

either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* at 242

(citing *Blum v. Yaretsky*, 457 U.S. 991, 102 (1982)).  Finally, under the joint action test, state

action may be found where the government has "so far insinuated itself into a position of

interdependence with the private actor that it was a joint participant in the enterprise."  *Id.* (citing

15

*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 357-58 (1974)).

Defendants are private individuals and not state actors under § 1983.  Plaintiffs'
complaint is devoid of any factual allegations to suggest that defendants' conduct can be
attributed to the State, or that the State encouraged, participated, or otherwise coerced
defendants' actions.  Moreover, executing and notarizing mortgage assignments are not functions
that traditionally lie within the exclusive province of the State.  Numerous courts have declined
to find that a notary public is a state actor.  *Bush v. Pharis*, Civ. Action No. 13-0452, 2013 WL
5961107, at *5 (W.D. La. June 3, 2013), R&R adopted, 2013 WL 5961110 (W.D. La. Nov. 7,
2013); *Worthington v. Rose Palmer, Esq.*, 2015 WL 7571822, at *6 (E.D. Va. Nov. 24, 2015);
*Wong v. Tobin*, Civ. Action No. 14-6037, 2015 WL 3794606, at *2 (D. N.J. June 17, 2015); and
*Sanders v. The Cty. of Bradford*, Civ. Action No. 11-1723, 2014 WL 10294769, at *5 n.6 (M.D.
Pa. Nov. 21, 2014), R&R adopted, 2015 WL 5036757 (M.D. Pa. Aug. 25, 2015).

d)    <u>Thirteenth Amendment</u>[13]

The thirteenth amendment provides that, "[n]either slavery nor involuntary servitude,
except as a punishment for crime whereof the party shall have been duly convicted, shall exist
within the States, or any place subject to their jurisdiction."  U.S. CONST. AMEND. XIII, § 1.
Furthermore, "[i]nvoluntary servitude is defined as an action by the master causing the servant to
have, or to believe he has, no way to avoid continued service or confinement."  *Watson v.
Graves*, 909 F.2d 1549, 1552 (5th Cir.1990) (citation and internal quotation marks omitted).

---

[13]   The court analyzes plaintiff's thirteenth amendment claim separately from his other
constitutional claims because  its guarantee of individual liberty applies to the actions of both state
actors *and* private entities.  *Jones v. Tyson Foods, Inc.*, 971 F.Supp.2d 648, 665 (N.D. Miss.2013)
(citation omitted).

Here, plaintiffs' complaint is devoid of any allegations to support a claim for slavery or involuntary servitude.

      e)      <u>42 U.S.C. § 1985</u>[14]

To state a claim under § 1985(3), plaintiffs must allege

> (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

*Hilliard v. Ferguson*, 30 F.3d 649, 652-653 (5th Cir. 1994).

In addition, the conspiracy must have a racially based animus. *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010). For purposes of asserting a conspiracy claim, plaintiffs must assert the "operative facts upon which the claim is based." *Lynch v. Cannatella*, 810 F.2d 1363, 1369-1370 (5th Cir. 1987). Conclusory allegations of conspiracy do not suffice. *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004) (discussing conspiracy under § 1983).

      Here, plaintiffs' complaint fails to set forth *facts* (as opposed to conclusory assertions) to support a conspiracy between the defendants, or that any defendant acted out of racial animus.

      f)      <u>Plaintiffs' Federal Law Claims are Untimely</u>

      Statutes of limitations serve as absolute bars to suit. *Nottingham v. Richardson*, 499 Fed. Appx. 368, 375 (5th Cir.2012). However, there is no federal statute of limitations for actions brought pursuant to 42 U.S.C. § 1983. *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir.1992). Therefore, the courts must borrow the forum state's limitations period for personal injuries,

---

    [14] Plaintiffs listed a 42 U.S.C. § 1985 claim in their deficient amended complaint. [doc. # 26]. Although since stricken, the court pauses to address the claim to confirm the futility of the proposed amendment.

including the state's provisions on tolling – so long as application of the rules does not undermine the goals of the federal statute at issue. *Id*. (citations omitted); *Hardin v. Straub*, 490 U.S. 536, 539, 109 S.Ct. 1998, 2000 (1989) (citation omitted).[15]

In Louisiana, delictual actions are subject to a liberative prescription period of one year. La. Civ. Code Art. 3492.  The Louisiana Civil Code provides that prescription runs against all persons, including absent persons and incompetents, unless exception is established by legislation.  La. Civ. Code Art. 3467-3468.  Louisiana recognizes three potential avenues to retard the running of prescription:  suspension, interruption and renunciation. *Bouterie v. Crane*, 616 So. 2d 657, 660 (La. 1993).  Longstanding Louisiana jurisprudence recognizes a limited suspensive exception founded on the ancient civilian doctrine of *Contra non valentem agere nulla currit praescriptio* where "in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues." *Corsey v. State, Through Dep't of Corr.*, 375 So. 2d 1319, 1321 (La. 1979) (citations omitted).  Typically,

> the doctrine of *contra non valentem* suspends prescription where the circumstances of the case fall into one of the following four categories:
>
> 1. Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>
> 2. Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
>
> 3. Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
>
> 4. Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

---

[15] The same limitations period applies to § 1985 claims. *Moreno v. Curry*, Civ. Action No. 06-0238, 2006 U.S. Dist. LEXIS 81416 (N.D. Tex. Nov. 7, 2006).

*Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994).

Plaintiffs rely on *contra non valentem's* fourth category, also commonly known as the discovery rule.  The discovery rule provides that "prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based." *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994).  In other words, "[p]rescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort."  *Campo v. Correa*,  828 So.2d 502, 510 (La. 2002) (citation omitted).  The prescriptive period will begin to run even if the injured party does not possess actual knowledge sufficient to initiate suit, as long as there is constructive knowledge. *Id*.

Constructive knowledge is such notice that excites attention and places the injured party on guard and calls for further inquiry.  *Id*.  "Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead."  *Id*.  The discovery rule "will not exempt the plaintiff's claim from the running of prescription if his ignorance is attributable to his own wilfulness or neglect; that is, **a plaintiff will be deemed to know what he could by reasonable diligence have learned**."  *Renfroe v. State ex rel. Dept. of Transp. and Development,*  809 So.2d 947, 954 (La. 2002) (emphasis added) (quoting *Corsey v. State of Louisiana, Through the Department of Corrections*, 375 So.2d 1319, 1322 (La.1979)).  The ultimate issue is the reasonableness of the plaintiffs' response.  *See, Campo, supra*.

Although state law governs the limitations period and tolling exceptions, federal law determines when a cause of action arises.  *Jackson, supra* (citation omitted).  "A cause of action under § 1983 accrues when the aggrieved party knows, or has reason to know of, the injury or

19

damages which form the basis of the action." *Ramon v. Rodriguez-Mendoza*, 372 Fed. Appx. 494 (5th Cir. April 1, 2010) (citing *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir.1995)).  Furthermore, the continuing-tort doctrine is one of accrual and thus a question of federal law. *Nottingham*, 499 Fed. Appx. at 375 (citation omitted).  "When a tort involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases." *Donaldson v. O'Connor*, 493 F.2d 507, 529 (5th Cir.1974), *vacated*, 422 U.S. 563, 95 S.Ct. 2486, and *vacated sub nom. Gumanis v. Donaldson*, 422 U.S. 1052, 95 S.Ct. 2673 (1975); *see also Lavellee v. Listi*, 611 F.2d 1129, 1132 (5th Cir.1980).

According to plaintiffs, by April 3, 2015, not only were they aware of the challenged assignments, but they also knew that the assignments had been recorded with the Clerk of Court for Monmouth County.  (Pl. Amend. Compl., pg. 5 [doc. # 22]; Pl. Opp. Memo., pgs. 12-13 [doc. # 22]).  Thus, by that time, defendants' alleged actionable conduct of crafting and recording fraudulent assignment had ceased and plaintiffs had sustained damages – to the extent that they sustained any cognizable injury at all. *See* discussion, *infra*.  Plaintiffs, however, failed to file suit until over one year later.

In an effort to excuse their patently untimely suit, plaintiffs emphasize that they are not attorneys and thus, it was not until early 2016 that they came to understand, after re-analyzing several earlier court opinions, that JPMC did not take possession of WAMU's residential loans by virtue of its agreement with the FDIC.  (Pl. Opp. Memo., pgs. 12-13 [doc. # 22]).  Be that as it may, plaintiffs are required to act diligently to protect their rights.  By April 2015, they had sufficient information for them to make inquiry into any claims against defendants.  Nonetheless,

they failed to do so.[16]

In sum, the court finds that plaintiffs' federal law claims are untimely, and subject to dismissal on that basis.

## III.   State Law Claims

a)      Louisiana Revised Statutes §§ 14:12, 14:26, 14:72.2 and 35:601

Plaintiffs seek to assert claims under Louisiana Revised Statutes §§ 14:12, 14:26, 14:72.2, and 35:601.  These provisions, however, impose criminal penalties.  Under Louisiana law, the district attorney – not private citizens – enjoys exclusive discretion to institute criminal prosecutions.  *Deville v. Frazier*, 476 So.2d 1051, 1053 (La. App. 3rd Cir. 1985).  Accordingly, plaintiffs do not state a claim for relief under these statutes.

b)      Plaintiffs' Remaining State Law Claims are Untimely

The court reiterates that, in Louisiana, delictual actions are subject to a liberative prescription period of one year.  La. Civ. Code Art. 3492.[17]  In contrast, in New Jersey, the statute of limitations for common law tort claims is six years.  N.J. Stat. Ann. § 2A:14-1.[18]  The parties do not address which state's statute of limitations should apply to plaintiffs' state law claims.

For diversity claims, the law of the forum state governs choice of law questions.  *Energy Coal v. CITGO Petroleum Corp.*, 836 F.3d 457, 459 (5th Cir.2016).  Louisiana law provides that,

---

[16]  In fact, they had sufficient information to file a counterclaim against JPMC in April 2015.  (Pl. Amend. Compl., pg. 5 [doc. # 22]; *see also* Pl. Prop. 2nd Amend. Compl., ¶¶ 35 [doc. # 26]).

[17]  Claims against a notary public also are subject to a liberative prescription period of one year.  La. R.S. § 35:200.

[18]  Alabama appears to have a two year statute of limitations for torts.  *See* Ala. Code § 6-2-38.

A. When the substantive law of this state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies.

B. When the substantive law of another state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies, except as specified below:

    (1) If the action is barred under the law of this state, the action shall be dismissed unless it would not be barred in the state whose law would be applicable to the merits and maintenance of the action in this state is warranted by compelling considerations of remedial justice.

    (2) If the action is not barred under the law of this state, the action shall be maintained unless it would be barred in the state whose law is applicable to the merits and maintenance of the action in this state is not warranted by the policies of this state and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice.

C. Notwithstanding the foregoing provisions, if the substantive law of another state would be applicable to the merits of an action brought in this state and the action is brought by or on behalf of any person who, at the time the cause of action arose, neither resided in nor was domiciled in this state, the action shall be barred if it is barred by a statute of limitation or repose or by a law of prescription or peremption of the other state, and that statute or law is, under the laws of the other state, deemed to be substantive, rather than procedural, or deemed to bar or extinguish the right that is sought to be enforced in the action and not merely the remedy.

La. Civ. Code Art. 3549.

In other words, if Louisiana substantive law applies to plaintiffs' tort claims, then

Louisiana's prescriptive period governs.  La. Civ. Code Art. 3549(A).  Alternatively, if New

Jersey or Alabama substantive law applies to plaintiffs' tort claims,[19]  then Louisiana's

---

[19]  Given that defendants are Louisiana domiciliaries, the mortgaged property is located in New Jersey, and plaintiffs are domiciled in Alabama, it is not self-evident which state's substantive law should apply to plaintiffs' claims.  The court, however, need not resolve this complicated choice of law issue because the laws in all three states are similar.  *See Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 587 (5th Cir.2010) (declining to resolve complicated choice of law issue where the law in each state was similar).

prescriptive period still applies so long as compelling considerations of remedial justice do not require maintenance of the action in this state.  La. Civ. Code Art. 3549(B)(1).  The court finds that the latter circumstances are not satisfied here, where plaintiffs do not have a viable claim against the defendants, *see* discussion, *infra*, and where they can raise similar claims in their counterclaim against JPMC in the New Jersey suit.  In addition, paragraphs (B)(2) and (C) of Article 3549 are inapplicable.  Thus, regardless of the substantive law to be applied, the court will employ Louisiana's prescriptive period.

Having determined that Louisiana's one year prescriptive period applies to plaintiffs' state law claims, the court finds that plaintiffs' state law claims are time-barred.  *See* discussion of timeliness of federal law claims, *supra*.

At this point, further analysis of plaintiffs' state law claims is unnecessary.  However, for the sake of completeness, and in the event that a higher court disagrees with the finding that plaintiffs' state law claims are untimely, the court will proceed to consider the sufficiency of plaintiffs' allegations for purposes of satisfying the elements of their claims.

c) <u>Conspiracy to Commit Conversion</u>

Under New Jersey law, a claim for conversion is premised on the notion that "the wrongful exercise of dominion and control over property owned by another [is] inconsistent with the owners' rights."  *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 753 (D. N.J .2013) (citation omitted).  A conversion claim consists of three elements:  (1) the defendant wrongfully exercised dominion or control over the property of another; (2) the property was taken without authorization; and (3) the property was taken to the exclusion of the owner's rights to it.  *Id*.

23

(citation omitted).[20]

In this case, plaintiffs do not allege that *these* defendants have wrongfully exercised dominion or control over their property or that their property was taken without authorization. Although plaintiffs allege that defendants *conspired* with others to commit conversion, an actual conversion has yet to occur. Accordingly, plaintiffs fail to state a claim for relief.

> d) <u>Fraud, Fraudulent Concealment, Civil Aiding and Abetting Fraud, Conspiracy to Defraud and Notary Fraud</u>[21]

New Jersey recognizes that a claim for common law fraud is comprised of five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Reed v. Hurd*, Civ. Action No. 15-1305, 2016 WL 1381376, at *4 (D. N.J. Apr. 6, 2016) (citation omitted).[22]

In this case, plaintiffs do not allege plausible *facts* to indicate that defendants *personally* knew or believed that any statements related to the assignments were false. Furthermore, to date, there are no facts to indicate that plaintiffs or any other person reasonably relied upon any

---

[20] The elements of a conversion claim are substantially similar under Louisiana and Alabama law. *See Dual Drilling Co. v. Mills Equipment Investments, Inc.*, 721 So.2d 853, 857 (La. 1998); *Shuler v. Garrison*, Civ. Action No. 16-095, 2017 WL 191267, at *16 (N.D. Ala. Jan. 13, 2017).

[21] The court did not find any case law in New Jersey, Louisiana, or Alabama to support a separate cause of action for "notary fraud."

[22] The elements of a fraud claim are similar under Louisiana and Alabama law. *See Guidry v. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999); *Kadlec Med. Ctr. v. Lakeview Anesthesia Associates*, 527 F.3d 412, 418 (5th Cir.2008); and *Deng v. Scroggins*, 169 So.3d 1015, 1024 (Ala. 2014).

allegedly false misrepresentations by defendants that caused plaintiffs to suffer any cognizable damages.  Indeed, there is no indication that plaintiffs have suffered a foreclosure.[23]  Moreover, plaintiffs apparently have brought these alleged irregularities to the attention of the foreclosure court in New Jersey.  Therefore, if the statements are false, it is not plausible that the foreclosure court will reasonably rely upon them.  Until such time, and in the absence of any allegations that plaintiffs are making payments to the wrong entity, it is of no moment to plaintiffs whether party A or party B has the right to foreclose.  In short, plaintiffs fail to state a claim for fraud.  *See Howes v. Wells Fargo Bank, N.A.*, Civ. Action No. 14-2814, 2015 WL 5836924, at *32–33 (D. Md. Sept. 30, 2015).

Under New Jersey law, the necessary elements of a civil conspiracy are:  "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or a lawful purpose to be achieved by unlawful means; and (4) special damages."  *John Wiley & Sons, Inc. v. Rivadeneyra*, 179 F.Supp.3d 407, 412 (D.N.J.2016) (citation omitted).[24]  Moreover, to support a claim for civil conspiracy, some act that itself is a tort must be committed by one of the parties pursuant to the conspiracy. *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir.2003) (citations omitted).  Here, plaintiffs allege no viable tort claim against any of the

---

[23] Plaintiffs also do not dispute that they executed the underlying note at issue, that they have not paid off the underlying debt, or that they are in default on the payments.

[24] The elements are similar under Alabama law.  *Sirmon v. Wyndham Vacation Resorts, Inc.*, Civ. Action No. 10-2717, 2012 WL 4341819, at *6 (N.D. Ala. Sept. 18, 2012).  Conspiracy is not a substantive tort under Louisiana law and by itself is not actionable. *Patrick v. Dupont*, 171 So.3d 259 (La. App. 1st Cir. 2015), *writ denied*, 171 So.3d 931 (La. 6/1/2015) (citation omitted).  Rather, it is the underlying tort that the conspirators agreed to perpetrate, and which they actually commit, that provides the actionable elements of a claim. *Id.*

alleged conspirators.

Under New Jersey law, the elements of an aiding and abetting claim include:  (1) the commission of a wrongful act; (2) knowledge of the act by the alleged aider-abettor; and (3) the aider-abettor knowingly and substantially participated in the wrongdoing.  *Morganroth & Morganroth, supra*.[25]  In this case, plaintiffs do not allege facts to plausibly show that any of the defendants personally knew of any wrongful acts committed by another.

A claim for fraudulent concealment under New Jersey law requires plaintiffs to prove five elements:

> (1) The defendant had a legal obligation to disclose evidence in connection with an existing or pending litigation; (2) the evidence was material to the litigation; (3) the plaintiff could not reasonably have obtained access to the evidence from another source; (4) the defendant intentionally withheld, altered, or destroyed the evidence with purpose to disrupt the litigation; and (5) the plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed.

*Sweeney v. Trinity Highway Products, LLC*, Civ. Action No. 16-0765, 2016 WL 7325471, at *2 (D. N.J. Dec. 16, 2016).[26]

In this case, plaintiffs do not begin to satisfy the elements of a fraudulent concealment claim. Plaintiffs certainly are aware of the assignments, and there is no indication that defendants owed a duty to disclose the assignments to plaintiffs or that they intentionally withheld the information. Finally, plaintiffs have not suffered any damage in the outcome of the foreclosure action as a result of the alleged "concealment" of documents.

---

[25]  A search of Alabama and Louisiana case law did not uncover any results for a civil aiding and abetting claim.

[26]  Louisiana and Alabama both appear to employ the doctrine of fraudulent concealment in the context of prescription.  *See Hardin Compounding Pharmacy, LLC v. Progressive Bank*, 125 So.3d 493, 500 (La. App. 2d Cir. 2013); *Limon v. Sandlin*, 200 So.3d 21, 24 (Ala.2015).  Of course, plaintiffs were aware of the assignments over one year before they filed suit.  *See* discussion, *supra*.

e)      Slander of Title

New Jersey case law recognizes that a claim for slander of title sounds in tort and requires a "malicious publication of false allegations concerning the title to one's property causing special damages." *Williams v. Borough of Hampton*, 2005 WL 1282049, at *2 (N.J. Super. Ct. Ch. Div. May 27, 2005) (citations omitted).[27]  Here, plaintiffs do not allege facts to plausibly support a finding that defendants maliciously made any false allegations in connection with the assignments.  Furthermore, there are no facts to support a finding that *these* defendants actually caused the assignments to be recorded in the mortgage records in New Jersey.

f)      New Jersey Civil RICO Statute

New Jersey's civil RICO statute contemplates the following elements:

> (1) the existence of an enterprise; (2) that the enterprise engaged in activities that affected trade or commerce; (3) that the defendant was employed by or associated with the enterprise; (4) that the defendant participated in the conduct of the affairs of the enterprise; (5) that the defendant participated though a pattern of racketeering activity; and (6) that the plaintiff was injured as a result of the conspiracy.

*Sharp v. Kean Univ.*, 153 F.Supp.3d 669, 674 (D.N.J.2015) (citation omitted).

The New Jersey RICO statute defines racketeering activity to include "theft and all crimes defined in chapter 20 of Title 2C of the New Jersey Statutes."  *Zanger v. Bank of Am., N.A.*, Civ Action No. 10-2480, 2011 WL 3501867, at *5 (D. N.J. Aug. 10, 2011) (citing N.J. Stat. Ann. § 2C:41–1(a)(1)(n)).

In this case, however, plaintiffs have not alleged facts which plausibly suggest that

---

[27]  The elements of the claim are similar under Alabama law.  *See Collins v. BSI Fin. Servs.*, Civ. Action No. 16-0262, 2016 WL 6776284, at *12 (M.D. Ala. Nov. 15, 2016) (citation omitted). Furthermore, in Louisiana, a slander of title action requires a showing of actual malice and the absence of probable cause.  *Lejeune v. Redd*, 478 So.2d 717, 722 (La. App. 1st Cir..1985).

defendants committed theft or any other enumerated crime.  Furthermore, a pattern of racketeering requires at least two incidents of theft by deception.  *Zanger, supra*.  Here, plaintiffs have not identified any other misrepresentations made by these defendants to any other specific property owners.  Accordingly, plaintiffs fail to state a claim for relief.

g)   Negligent Misrepresentation

The elements of a claim for negligent misrepresentation under New Jersey law include: "(1) an incorrect statement, (2) negligently made, (3) justifiably relied on, (4) resulting in economic loss."  *Andreula v. Capital One Fin. Corp.*, Civ Action No. 14-5276, 2016 WL 6953422, at *3 (D. N.J. Nov. 28, 2016) (citation omitted).[28]  In this case, at minimum, plaintiffs do not allege that they or anyone else justifiably relied upon any incorrect statement that has caused plaintiffs to suffer economic loss.

h)   Gross Negligence

To prove negligence under New Jersey law, a plaintiff must establish:  "(1) that the defendant owed the plaintiff a duty of care; (2) that the defendant breached that duty of care; and (3) that the defendant's breach proximately caused the plaintiff's injury."  *Collick v. William Paterson Univ.*, Civ. Action No. 16-0471, 2016 WL 6824374, at *26 (D. N.J. Nov. 17, 2016) (citations omitted).  Gross negligence is defined as "the want or absence of, or failure to exercise, slight care or diligence," and "refers to behavior which constitutes indifference to consequences."

---

[28]  The elements of this claim are similar under Louisiana and Alabama law.  *See Kadlec Med. Ctr., supra* and *Shields v. Washington Nat. Ins. Co.*, 375 F.Supp.2d 1346, 1350 (M.D. Ala. 2005).

*Id.*  (citations omitted).[29]

In this case, plaintiffs have not established that the individual defendants personally owed them a duty of care in connection with the execution and notarization of documents that endeavored to reassign their mortgage from one entity to another.  Furthermore, plaintiffs have not asserted any cognizable injury as a result of the reassignment where they still have the ability to raise any error in the assignments before the foreclosure court, and where there are no allegations that they are current on their loan payments.  In the absence of a viable claim for negligence against defendants, plaintiffs do not state a claim for relief under the more demanding gross negligence standard.

## IV.    Unclean Hands and Judicial Estoppel

In their opposition to defendants' motion to dismiss, plaintiffs contend that defendants have entered the court with unclean hands and that they are judicially estopped from making contradictory claims.

"The doctrine of unclean hands allows a court to bar recovery when a party asserting an *equitable claim* against another can be shown to have engaged in fraud or bad faith behavior with that person."  *Kansas City S. R. Co. v. Pilgrim's Pride Corp.*, Civ Action No. 06-0003, 2010 WL 1293340, at *11 (W.D. La. Mar. 29, 2010).  In this case, however, defendants are not asserting any claims, equitable or otherwise, against plaintiffs.  Accordingly, the doctrine is

---

[29]    New Jersey's definition of gross negligence is consistent with that of Louisiana and Alabama.  *See Ambrose v. New Orleans Police Dep't Ambulance Serv.*, 639 So.2d 216, 219 (La. 1994); *Harris v. JLG Indus.*, Civ. Action No. 15-0365, 2016 WL 4126521, at *11 (S.D. Ala. Aug. 2, 2016)

inapplicable.

> Judicial estoppel is
>
> a common law doctrine by which a party who has assumed one position in his
> pleadings may be estopped from assuming an inconsistent position.  The purpose
> of the doctrine is to protect the integrity of the judicial process, by prevent[ing]
> parties from playing fast and loose with the courts to suit the exigencies of self
> interest.  Because the doctrine is intended to protect the judicial system, rather
> than the litigants, detrimental reliance by the opponent of the party against whom
> the doctrine is applied is not necessary.

*Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 208 (5th Cir. 1999).

Judicial estoppel requires proof of the following, "(1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently."  *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) (citation omitted).

In this case, plaintiffs have not established that the instant defendants, as opposed to JPMC, have taken a prior inconsistent position with another court.  Accordingly, judicial estoppel remains unavailable.

**V.      Shillen Johnson**

Defendant Shillen Johnson did not join in the present motion – possibly because he was never served.  Nonetheless, the court possesses the inherent authority to dismiss a party sua sponte.  *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 1995 WL 534901 (5th Cir. 1995) (unpubl.) (the district court sua sponte dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their

answer); *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties).  Also, where a defending party establishes that a plaintiff has no cause of action, this defense should inure to similarly situated defendants.  *See Lewis v. Lynn*  236 F.3d 766, 768, 236 F.3d 766 (5th Cir. 2001) (citations omitted).

## Conclusion

As instructed by *Iqbal*, the court has accorded no weight to the conclusory allegations set forth in plaintiffs' complaint, as amended.  *See Iqbal, supra*.  Plaintiffs' remaining allegations contain no facts sufficient to confer plausibility upon their claims.  *Id*. Instead, the complaint, as amended, remains no better than "a formulaic recitation of the elements of a cause of action," which does not satisfy the Rule 8 pleading standard.  *Id*.  Under these circumstances, there is no reasonable expectation that discovery will reveal evidence to support the missing elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.  Accordingly,

IT IS RECOMMENDED that the motion to dismiss for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6) [doc. # 5], filed by defendants, Angela Ruth Payne, Charlotte Russ, and Todd C. Sylvester, be GRANTED, and that plaintiffs' claims against said defendants, plus those against Shillen Johnson, be DISMISSED, with prejudice, in their entirety.  Fed.R.Civ.P. 12(b)(6).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or

response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 31st day of January 2017.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE